IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jeremy Nowack | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Case No. 15 C 414 |
| | ) |
| | ) |
| Nate Warner, Chicago Police | ) |
| Detective John Salemme, Star # | ) |
| 20769, Chicago Police Officers | ) |
| Jannette Varela, Star # 12779, Treta | ) |
| Pope, Star # 3840, and the City of | ) |
| Chicago, a Municipal Corporation | ) |
| | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

In this action, plaintiff Jeremy Nowack alleges that in the early morning hours of December 16, 2012, he was attacked without provocation by an intoxicated, off-duty Chicago police officer, defendant Nate Warner, while both men were patrons at a bar known as Deuce's and The Diamond Club. Plaintiff states that Warner struck him repeatedly in the head and face, and that Warner dropped his firearm on the floor in the course of the altercation. Chicago police officer defendants Jannette Varela and Treta Pope responded to a 911 call to the scene. Varela and Pope entered Deuce's and The Diamond Club, retrieved Warner's weapon, and returned it to him, even though Warner was visibly

intoxicated. Varela and Pope did not detain or arrest Warner. In fact, at the hospital where plaintiff was taken for treatment, Varela and Pope tried to persuade plaintiff not to pursue criminal charges against Warner.

Plaintiff nevertheless signed criminal complaints against Warner, but defendant John Salemme, a Chicago police detective, "intervened to prevent Nowack from filing criminal charges." As a result, plaintiff asserts, he was "precluded or prevented from filing his criminal complaint or having the case heard in criminal court."

Plaintiff's second amended complaint, which has been removed to this court, asserts six claims for relief. Counts I-III are state law claims against defendant Warner, which Warner has answered. Count IV asserts a *Monell* claim against "all defendants" based on alleged due process and equal protection violations. Count V asserts a § 1983 conspiracy among all defendants to deprive plaintiff of equal protection. Count VI asserts that the City of Chicago has indemnity obligations pursuant to ILCS 739 10/9-102 for all damages caused by its agents while acting within the scope of their employment.

Before me is the City's motion to dismiss Counts IV and V, which I grant for the reasons explained below.

I.

While I must, at this stage, accept all well-pled factual statements as true and draw all reasonable inferences from those facts in plaintiff's favor, I need not accept the truth of conclusory allegations that merely recite the elements of a claim. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). That is, however, what plaintiff's *Monell* allegations boil down to.

*Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 694 (1978), established that a local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983." *Id*. Accordingly, to establish *Monell* liability, a plaintiff must demonstrate: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009) (citation omitted). Moreover, it is not enough that a municipal policy or practice play some causal role in the alleged constitutional violation. *Estate of Sims ex rel. Sims v. County*

3

*of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). Instead, the policy or practice must be "the moving force behind it." *Id*. (citation omitted).

Plaintiff's second amended complaint alleges the following *de facto* policies, practices, or customs of the City of Chicago:

a) "concealing and/or suppressing evidence of officer misconduct," including "failure to legitimately or sufficiently investigation allegations of misconduct; failure to accept complaints from citizens against police officers; failure to promptly record witness statements or preserve evidence; failure to promptly interview the suspected officer; failure to properly and sufficiently discipline an officer, even where the complaint is sustained; fabrication of exculpatory evidence or destruction of incriminating evidence; and failure to initiate prompt disciplinary procedures related to the alleged misconduct, even when the allegation of misconduct is so obviously true";

b) "investigating complaints against off-duty officers differently than complaints against other citizens," including, inter alia, refusing to file any criminal charges or, limiting charges against off-duty officers to misdemeanors, regardless of the severity or outrageousness of the alleged misconduct. . ..";

c) "failing to maintain accurate and complete records of complaints and investigations of misconduct";

d) "hiring and retraining unqualified officers, and failing to properly train, monitor and/or supervise its police officers"; and

e) maintaining a "code of silence" in the Chicago Police Department, which plaintiff characterizes as "an implicit understanding between and among members of the Chicago Police Department resulting in a refusal or failure to report instances of misconduct of which they are aware, including the use of unlawful force, despite their obligation to do so as sworn peace officers."

Cmplt. at ¶¶ 30-35.

Abundant case law from this district supports the conclusion that allegations such as these are inadequate. *See, e.g., Mikolon v. City of Chicago,* 2014 WL 7005257 (N.D. Ill. Dec. 11, 2014) (Shah, J.); *Starks v. City of Waukegan*, 2013 WL 2243089 (N.D. Ill. May 21, 2013) (Feinerman, J.); *Travis v. City of Chicago*, 2012 WL 2565826 (N.D. Ill. June 29, 2012) (Gottschall, J.); and *Bowen v. Sullivan*, 2012 WL 2116121 (N.D. Ill. June 8, 2012) (Darrah, J.). Plaintiff does not meaningfully distinguish these cases, several of which addressed allegations very similar to those plaintiff asserts here. For example, in *Mikolon*, the plaintiff alleged policies and practices including:

> a. a code of silence whereby officers refuse to report the unconstitutional and criminal misconduct of other officers ...; whereby officers remain silent or give false and misleading information during official investigations to cover up unconstitutional and criminal misconduct ...; and whereby officers maintain loyalty to each other over the constitutional rights of citizens;
>
> b. [a] willful, wanton, and deliberately indifferent failure to train, supervise, and discipline police officers in regards to unconstitutional and criminal misconduct;
>
> c. [a] failure to adequately investigate and substantiate allegations of unconstitutional and criminal misconduct by police officers; and
>
> d. [a] failure to adequately discipline police officers that engage in unconstitutional and criminal misconduct.

5

*Mikolon*, 2014 WL 7005257, at * 4 (original alterations). The court concluded that these "vague" allegations did not "plausibly suggest a 'direct causal link' between the purported municipal policy and the alleged constitutional deprivation." *Id.* (citing *Arlotta v. Bradley Ctr.*, 349 F.3d 517, 522 (7th Cir. 2003)).

The only case plaintiff identifies as supporting the sufficiency of his *Monell* allegations actually militates in favor of dismissal. In *Armour v. Country Club Hills*, No. 11 C 5029, 2014 WL 63850 (Jan. 8, 2014) (Gottschall, J.), the court held that "a plaintiff must plead some specific facts supporting a claim that a municipality maintained a policy, custom or practice that caused a constitutional deprivation." *Id.* at *6 (citing *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011)). The *Armour* court went on to explain that the plaintiff's "custom and practice" *Monell* claim did not meet this requirement because the plaintiff had merely "related the facts related to his own injury," then asserted that the City had "failed to properly train and supervise its officers with regard to the use of force, the completion of reports, and the collection of evidence." *Id.* at *7. These allegations, the court found, "lumped together" a wide variety of "customs" and

6

"policies" such that discovery on them would be "the epitome of a fishing expedition." *Id.*[1]

So, too, in this case, plaintiff recounts his encounters with Warner, Varela, and Pope and claims that Salemme scuttled the investigation and criminal pursuit of Warner, then leaps to the conclusion that these individuals' conduct was the "direct result" of the *de facto* customs and policies plaintiff claims existed. But the complaint's factual allegations do not support this leap. For example, plaintiff alleges a policy, practice, or custom of "concealing and/or suppressing evidence," but his factual allegations do not state that any of the defendants, or anyone else identified in the complaint, did either of these things, much less does it assert that they participated in the "fabrication of exculpatory evidence or destruction of incriminating evidence," as he claims was the City's policy or custom.

Plaintiff insists that his allegations provide "specific detail regarding the particular nature of the policy alleged," and "specific examples of illegal conduct which, individually and together, form the basis of a de facto policy or practice which is actionable under *Monell*." But in the absence of any

---

[1] The court did not dismiss the plaintiff's *Monell* claim entirely, however, concluding that he had adequately pled a claim under Monell's "policymaker" prong. Plaintiff does not assert that type of claim here.

7

facts beyond those relating to his specific experience, plaintiff has pled, at best, conduct that is "consistent with" the policies he describes. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). He has not raised a reasonable inference that the City maintained such policies, practices, or customs, or that they were the "moving force" behind his alleged constitutional violations. *McCauley* 671 F.3d at 618.

The same defects doom plaintiff's conspiracy claim, as the complaint does not allege sufficient facts to raise the reasonable inference that any conspiracy was the result of a municipal policy. See Anderson v. City of Chicago, No. 99 C 4, 2003 WL 1731846 (N.D. Ill. March 31, 2003)(Coar, J.) ("Although plaintiffs can plead conclusory allegations in support of conspiracy counts, where they seek to assert liability against a municipality the complaint must contain more allegations than the acts of the municipality's agents.")

II.

For the foregoing reasons, counts IV and V against the City are dismissed.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: June 22, 2015